# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

TOM SUXSTORF, Individually and on Behalf of
All Others Similarly Situated,

         Plaintiff,

vs.

CLIENT SERVICES, INC.,

         Defendant.

Case No.: 17-cv- 43

**PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

Hon. Lynn Adelman

Plaintiff Tom Suxstorf , through counsel, submits the following brief in opposition to Defendant Client Services, Inc.'s ("Client Services") motion to dismiss.

## INTRODUCTION

Plaintiff filed a complaint alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Plaintiff alleged that Client Services mailed Plaintiff and a class of similarly situated individuals a debt collection letter with a payment option that is confusing. Despite twice stating that Client Services was attempting to "resolve" the account, it is unclear whether a consumer who actually made all the requested payments would, in fact, resolve the account. The underlying debt is a credit card account, and certainly, the creditor may be adding interest at the default rate which could be as high as 30% annually or more. An offer to "resolve" a balance or the account must either be for a set, pre-determined amount which breaks up the listed "balance due" into payments that add up to the balance, or if the account is subject to other charges including contractual interest, the letter should specify whether those additional amounts would be waived or would remain owing afterward. *See, eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

1

Client Services' letter does not inform the customer whether the offer is subject to other charges, such as interest, yet makes the representation that the proffered payment plan is an attempt to "resolve" the account. As such, the letter is confusing and misleading to the unsophisticated consumer and violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f. (Compl., Exhibit A).

Client Services has filed a motion to dismiss. (*See* Client Services' Brief in Support of Motion to Dismiss ("Def. Br.")) Client Services' arguments are wholly without merit and should be denied. The letter violates the FDCPA and is confusing as a matter of law. For these reasons, the motion to dismiss should be denied.

## FACTUAL BACKGROUND

Plaintiff Tom Suxstorf is an individual who resides in the Eastern District of Wisconsin (Milwaukee County). (Complaint ("Compl.") ¶ 3.) Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt incurred for personal, family or household purposes. (Compl. ¶¶ 4, 8-9). Defendant Client Services is a debt collector who mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Synchrony Bank Sam's Club® Personal Credit" ("Synchrony"). (Compl. ¶ 8, Exhibit A).

Exhibit A is labeled as a "Payment Option Notice." (Compl., Ex. A). Client Services' letter states there is a balance due of $2402.01. (Compl. ¶ 12, Ex. A). Exhibit A also contains the following offer:

> In an effort to resolve the above-referenced account, we are authorized to discuss payment options. We have many payment options that may meet your individual needs, including breaking the balance into 3 monthly payments, 6 monthly payments, or 12 monthly payments.

(Compl. ¶ 14, Ex. A). Furthermore, the letter states: "I look forward to working with you to resolve this balance." (Compl. ¶ 15, Ex. A). The alleged debt is a credit card account. (Compl.

2

¶¶ 8-9, Ex. A). Upon information and belief, the debt will accrue interest, likely at a default or penalty rate between 20 and 30 percent or possibly more, between the date listed on Exhibit A and the date Plaintiff would make a payment on the alleged debt. (Compl. ¶ 17). Synchrony may also assess late fees on the account. (Compl. ¶ 18). Thus, it is unclear if the "Balance Due" listed on Exhibit A is the number that will be broken into "3 monthly payments, 6 monthly payments, or 12 monthly payments" to resolve the account, or whether the "Balance Due" will change by a substantial amount over the course of 3, 6, or 12 months due to the accrual of interest and late fees, consequently making the required payments increase over the course of time. (Compl. ¶ 19). The unsophisticated consumer has no way of determining what the settlement payments should be in order to definitively "resolve" the debt. (Compl. ¶ 22).The letter is confusing as a matter of law. Consequently, Client Services' motion to dismiss is without merit and should be denied.

## ARGUMENT

## I.   LEGAL STANDARDS

### A.   Standard On A Motion To Dismiss

A claim for relief must be supported by "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). A court must "accept as true all well-pleaded facts alleged, drawing all possible inferences in the plaintiff's favor." *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but must only exhibit "facial plausibility" by "plead[ing] factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs are not required to prove their case at the pleading stage. *Brooks*, 578 F.3d at 580-81; *In re: Text Messaging Antitrust Litig.*, 630 F. 3d 622, 629 (7th Cir. 2010).

### B. FDCPA Standards

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors," whether or not there is a valid debt. 15 U.S.C. § 1692(e); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692e, 1692f and 1692g. Plaintiffs need not prove intent, bad faith or negligence in an FDCPA case. The FDCPA is a strict liability statute. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); *Ross v. Client Services Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007).

Whether a debt collector's conduct violates the FDCPA is judged from the standpoint of a hypothetical "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is objective— whether the plaintiff or any class members were misled is not an element of a cause of action. *Bartlett,* 128 F.3d at 499; *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

The Seventh Circuit treats claims that a debt collection letter is false, confusing or misleading as a question of fact, that if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion.

4

*Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007) ("Other circuits, perhaps less kindly disposed to survey evidence than we, treat the deceptive character of a debt collector's communication as a question of law, so that if the communication is not deceptive on its face, the plaintiff is forbidden to try to show that it would be likely to deceive a substantial number of its intended recipients. We disagree with that position."); see also *McMillan v. Collection Professionals*, 455 F. 3d 754, 759 (7th Cir. 2006) ("We have cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because district judges are not good proxies for the unsophisticated consumer whose interest the statute protects."); *see also Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 628 (7th Cir. 2009) (extrinsic evidence in forms other than a survey is permissible).

Further, the Seventh Circuit has enumerated three categories of FDCPA cases alleging false or deceptive statements: 1) statements that are plainly not misleading or deceptive on their face (summary judgment for Defendant); 2) statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer (extrinsic evidence necessary); and 3) statements that are plainly deceptive communications (summary judgment for plaintiff without extrinsic evidence)). *Ruth v. Triumph P'Ships*, 577 F.3d 790, 800-01 (7th Cir. 2009).

Generally, all a plaintiff must do to survive a motion to dismiss a complaint alleging an FDCPA violation is to allege that the debt collector's letter is confusing. *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999) ("How a particular notice affects its audience is a question of fact, which may be explored by testimony and devices such as consumer

5

surveys."); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999) ("A

contention that a debt-collection notice is confusing is a recognized legal claim; no more is

needed to survive a motion under Rule 12(b)(6)."); *see also Marshall-Mosby v. Corporate*

*Receivables, Inc.*, 205 F.3d 323, 326-27 (7th Cir. 2000) ("a FDCPA complaint states a legal

claim, and therefore a FDCPA complaint survives a motion to dismiss under Rule 12(b)(6)

simply by alleging that a dunning letter was confusing…[such a complaint is] legally sufficient

[if] 'it [is] possible to imagine evidence consistent with the allegations of the complaint that

would establish confusion.'" (quoting *Walker*, 200 F.3d at 503)); *Bennett v. Schmidt*, 153 F.3d

516 (7th Cir. 1998).

> The only possible exceptions to the rule are specified in *Evory*:
>
> A plaintiff might rest on the text of the communication, and have no other evidence to offer, and then if there was nothing deceptive-seeming about the communication the court would have to dismiss the case. *Taylor v. Cavalry Investment, L.L.C., supra*, 365 F.3d at 574-75 ("if it is apparent from a reading of the letter that not even 'a significant fraction of the population' would be misled by it. . ., the court should reject it without requiring evidence beyond the letter itself"); *McMillan v. Collection Professionals, Inc., supra*, 455 F.3d at 760 ("undoubtedly, there will be occasions when a district court will be required to hold that no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that will violate the statutory provision"). Or the defendant might have used clear statutory language, as in *Jang v. A.M. Miller & Associates,* 122 F.3d 480, 483-84 (7th Cir. 1997), or our safe-harbor language. There might also be a case in which a false or deceptive statement clearly was immaterial, as in *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 738-40 (7th Cir. 2004); see also *Pettit v. Retrieval Masters Creditors Bureau, Inc., supra*, 211 F.3d at 1060-62, or was clarified elsewhere, as in *McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002), or in which a statement claimed to be false was obviously true, as in *Taylor v. Cavalry Investment, L.L.C., supra*, 365 F.3d at 575-76.

*Evory*, 505 F.3d at 776-77. The standard for finding that a debt collection letter complies with

the FDCPA as a matter of law at the pleading stage is an extremely heavy burden for a defendant

6

to meet. *McMillan*, 455 F.3d at 759. Only when it is absolutely obvious that language complies with the statute, can a confusion claim be dismissed at the pleading stage. *Evory*, 505 F.3d at 776-777.

## II. CLIENT SERVICES' COLLECTION LETTER IS FACIALLY UNCLEAR WHETHER MAKING PAYMENTS WOULD ACTUALLY "RESOLVE" THE DEBT.

Client Services' form debt collection letter contains a payment plan based on a moving target number. Or, alternately, Client Services' debt collection letter contains a payment plan based on a fixed number. Neither the unsophisticated consumer nor Defendant itself can determine which is true from the language in Exhibit A, and, consequently, the consumer cannot determine whether making all the payments would actually "resolve" the account. Thus, the letter is confusing as a matter of law.

The letter is labeled as a "PAYMENT OPTION NOTICE." (Compl., Ex. A).The letter offers to resolve the balance by breaking it up into monthly payments, but then fails to specify if the payment plan includes interest and/or fees, which would make the monthly payments increase over time. As such, simply dividing the balance listed on Exhibit A by 3, 6 or 12 and paying that amount may not actually resolve the debt. The normal meaning of entering into a payment plan is that the debt is permanently resolved once all the payments have been made. No rational person would enter into a payment plan if the money paid would not actually resolve the debt. However, in the instant case, the unsophisticated consumer, having completed one of the payment options by dividing the balance due listed on the letter, would have no way of knowing if he or she had actually resolved the debt, and the creditor could decide, on a whim, that they had not and continue collections on the account. Defendant itself admits in its brief

7

that this is exactly the type of confusion the letter was intended to create: "Significantly, at no point in the letter does Client Services state that any particular payment option, if selected, will "resolve" the account." Def. Br. at 9. However, elsewhere in its brief, Defendant asserts, "only a 'fantastic conjecture' or an 'ingenious misreading' of the Letter could lead to the conclusion that fees, interest or penalties would be assessed against a consumer for making payments under any payment option offered by the Letter." Def. Br. at 9. Thus, Defendant itself suffers from the exact same confusion Plaintiff alleges the unsophisticated consumer suffers from in trying to interpret Exhibit A. It is impossible to tell if the payment options would actually resolve the debt from Exhibit A. Defendant has contradictorily claimed that the letter does not clearly state that the payment options will resolve the account, but then claims Plaintiff is being "fantastic" in imagining that the payment options may not resolve the account. *Id.* Defendant's position, like Exhibit A, is incoherent. Thus, the letter is clearly completely contradictory, misleading, and confusing to the unsophisticated consumer. Defendant makes a number of arguments as to why the complaint should be dismissed. All are without merit.

A.    **The Seventh Circuit requires information regarding interest and/or fees to be clearly communicated in debt collection letters.**

Client Services' failure to include an explanation of how interest and late fees affect the payment options in Exhibit A misleads and confuses the unsophisticated consumer. The Seventh Circuit has clearly articulated why explanatory language on interest and/or late fees is essential to avoid confusing the unsophisticated consumer. The dunning letter in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) listed the "unpaid principal balance" of $ 178,844.65 but added that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges. . . . The amount to

8

reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures." *Id*. An 800 number was listed. *Id.* The court held that the letter violated the FDCPA because it did not state the amount of the debt owed by the plaintiff, since the debt was not limited to the unpaid principal. *Id.* Thus, in order to determine the amount owed, the plaintiff would have had to call the defendant. *Id.* The court stressed that this was unacceptable because "[i]t is notorious that trying to get through to an 800 number is often a vexing and protracted undertaking, and anyway, unless the number is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to." *Id.* Consequently, the court adopted safe harbor language to be used in debt collection letters to clarify what is actually owed when the number changes due to interest and/or other charges:

> As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].

*Id.* at 876.

Similarly, in the instant case, Exhibit A did not unambiguously state the amount of the settlement payments. It was unclear if the settlement payments were subject to interest and late fees. Thus, in order to determine the amount the settlement payments should be in order to actually resolve the debt, Plaintiff would have had to call Defendant. As explained above, the court stressed that this is unacceptable because of the potential for abuse associated with being forced to call debt collectors to get information. *Id.* at 875. The confusion could have been addressed with language like the above quoted safe harbor language, thereby making it clear to

9

the unsophisticated consumer whether or not the settlement offer was for a set, pre-determined amount. But no such safe harbor language or a statement that the payment options were not subject to interest and late fees was included in Exhibit A. Thus, in order to determine how to comply with the payment options and resolve the debt, the unsophisticated consumer would be forced to call the debt collector.

Further, Defendant admitted in its brief that this is exactly what the letter was designed to do: "Significantly, at no point in the letter does Client Services state that any particular payment option, if selected, will 'resolve' the account." Def. Br. at 9. This is exactly Plaintiff's point. Exhibit A offers payment options that are false and misleading in it is not clear if they actually resolve the account. In order to settle the account, the unsophisticated consumer would be forced to call the debt collector to find out what, if any, interest and late fees should be added to the payments. However, the letter fails to include *Miller*-like safe harbor language that informs the consumer of the fact that this is necessary. Instead, the letter makes a foggy statement at the end, vaguely implying that the payment options will resolve the listed balance but giving no clear, unambiguous instructions to the unsophisticated consumer on how to certainly do so. As such, the letter misleads the unsophisticated consumer into making payments that may not actually resolve the debt. Defendant's only defense seems to be that this is what they intended. It is not a defense to an FDCPA confusion claim to say that the confusion was intended.

**B.  Debt collectors must be precise about the amounts they are trying to collect.**

Additionally, even if the "balance" listed was all that Defendant was collecting and breaking it down into 3, 6 or 12 monthly payments would have, in fact, resolved the debt, Exhibit A still violates the FDCPA because the unsophisticated consumer would have no way of

10

knowing this. The same confusion was found to violate the FCDPA in a recent case in the

Northern District of Illinois, *Wilkerson v. Bowman*, 200 F.R.D. 605 (N.D. Ill. 2001). Defendants

in that case conceded that the letter at issue did not provide "an exact number for accrued interest

and late charges." *Id.* at 607. The Defendants argued that there was no need for them to disclose

precise figures for applicable rebates, interest, and late charges, because these were not amounts

that defendants actually sought to collect. *Id.* The court disagreed on grounds that the reader

could not determine the amount of the debt the defendants sought to recover. *Id.* The court noted

that defendants testified that they intended only to collect the amount listed as "balance," but the

court could not understand "how or why the debtor was expected to know that although 'late

charges,' 'attorney fees,' and '20% interest per annum' are listed as part of the 'indebtedness,' she

was not in fact expected to pay those amounts." *Id.* The court explained its decision as follows:

> Defendants provide no explanation for the failure to be precise about the amount
> owed. The fact that they did not in fact intend to collect any amounts beyond the
> balance is unsatisfying. Most importantly, that fact is not disclosed in the letter
> itself. In any event, as Plaintiff urges, there may be as much harm in overstating a
> debt as in understating it. Faced with a list of potential but uncalculated additional
> charges, including 20% interest on a figure she cannot calculate, and lacking any
> information about the degree, if any, to which rebates will reduce her liability, a
> debtor may well be uncertain whether she should dispute the debt or pay it. The
> court concludes that the form letter Defendants sent to Plaintiff in this case
> violates the FDCPA.

*Id.* at 608 (internal citations omitted).

The same is true of the instant case. Defendant stated that its interpretation of Exhibit A

is that the payment options do not actually purport to "resolve" the debt. Def. Br. at 9. One can

only infer that it appears to have been Defendant's intention to collect payments from Plaintiff

that do not actually resolve the debt. A letter labeled "PAYMENT OPTION NOTICE" that

includes the statement, "I look forward to working with you to resolve this balance" following 3,

11

6 or 12 monthly payment offer that, Defendant admits may or may not resolve the debt, is clearly misleading to the unsophisticated consumer. The confusion only doubles when Defendant, at the same time, asserts that "only a 'fantastic conjecture' or an 'ingenious misreading' of the Letter could lead to the conclusion that fees, interest or penalties would be assessed against a consumer for making payments under any payment option offered by the Letter." Def. Br. at 9. Defendant's position, like Exhibit A itself, is unintelligible. When Defendant itself asserts that the letter does not clearly state that the payment options will resolve the debt, how such an assertion is fantastic when made by Plaintiff on behalf of the unsophisticated consumer is a mystery. The unsophisticated consumer would have been expected to call to get the interest and/or late fees information or have no way of knowing whether the payments resolved the debt. Defendant offers no explanation for their failure to be precise about the amount they are ultimately trying to collect. Even if they were not actually intending to collect interest and/or late fees, the letter is still false and misleading because "that fact is not disclosed in the letter itself." *Id.* Plaintiff has no way of knowing what to pay to resolve the debt and Defendant has, again, conceded this: "Significantly, at no point in the letter does Client Services state that any particular payment option, if selected, will 'resolve' the account." Def. Br. at 9. Thus, the payment options are misleading because it is entirely unclear from the letter if breaking the listed balance into 3, 6 or 12 payments would resolve the account. The letter fails to include any type of *Miller*-like safe harbor language clarifying that matter to the debtor. Therefore, the payment options are misleading as a matter of law, in violation of the FDCPA.

### C.    Defendant misreads Seventh Circuit case law on § 1692e claims.

Defendant asserts the following regarding 15 U.S.C. § 1692e claims:

> [T]o succeed generally on a 15 U.S.C. § 1692e claim, a consumer must show both that (i) the amount represented was false, and (ii) that an unsophisticated consumer would be misled or confused by the letter. *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645 (7th Cir. 2009); *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012).

Def. Br. at 8. It is unclear where Defendant got the idea that a § 1692e claim is limited to controversies involving the amount of the debt. Nowhere does § 1692e mention the amount of the debt, and there is no Seventh Circuit case law so limiting § 1692e claims to the amount of the debt. § 1692e generally prohibits, ""any false, deceptive, or misleading representation or means in connection with the collection of any debt." Such broad language encompasses a wide variety of claims. For example, in *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 762 (7th Cir. 2006), § 1692e served as a basis to bring a claim that a collection letter may be making a statement that is false or misleading to the unsophisticated consumer by calling into question a debtor's honesty and good intentions simply because a check was dishonored. § 1692e serves as a basis to bring any claim involving false, deceptive, or misleading language in debt collection letters. There is simply no basis in the plain language of the statute or Seventh Circuit case law that § 1692e is somehow limited to amount of debt cases.

Defendant then goes on to argue that its letter is not confusing because "debt collectors are free, as the Seventh Circuit has already held, to provide a single "balance due" rather than breaking up the amount owed into principal balance, interest, and fees. *See Barnes v. Advanced Call Ctr. Techs.*, LLC, 493 F.3d 838 (7th Cir. 2007)." Def. Br. at 8. Defendant fundamentally fails to understand Plaintiff's claim. Plaintiff, nowhere in his complaint, claimed confusion about how the balance due was stated. Plaintiff claimed confusion as to whether breaking the listed balance into 3, 6 or 12 equal payments would actually permanently *resolve* the debt, as <u>Exhibit A</u>

13

insinuates. Compl. ¶ 24. As Defendant itself has conceded, <u>Exhibit A</u> does not clearly state that the payment options would "resolve" the debt. Def. Br. at 9. Thus, the unsophisticated consumer has absolutely no way of knowing whether the debt is resolved or not, even if they send Defendant significant sums of money. In the absence of *Miller*-like language explaining whether or not interest is being added, the unsophisticated consumer has no way of knowing if the debt is resolved after sending 3, 6, or 12 equal payments in. The payment plan in <u>Exhibit A</u>, thus, is confusing as a matter of law.

**D. Claims can be brought under §1692e and § 1692f without specifying a subsection.**

Defendant also lists every subsection of §1692e in full. Def. Br. at 6-7. Defendant then argues, "a review of the foregoing provisions of this section of the statute does not establish that the purported 'confusion' described in the Complaint falls within any of the specific prohibitions listed, in full, above." Def. Br. at 8. Defendant goes on to assert that a claim cannot be brought under the general prohibition of §1692e: "Plaintiff claims that Client Services generally violated 15 U.S.C. § 1692e, without identifying the actual component of this section of the statute." Def. Br. at 5. In other words, Defendant argues that Plaintiff must fit his claim into one of the specific subsections of § 1692e, or he fails to state a claim. This is counter to binding Seventh Circuit precedent, which specifically holds that the "specific prohibitions" to which Defendant refers are not exhaustive, and the FDCPA permits claims to be brought under the general prohibition found in § 1692e:

> Section 1692e states that a debt collector cannot use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute also enumerates *a non-exhaustive list* of specific practices that are per se 'false or misleading.' . . . Ms. McMillan submits that CPI's letter questioning her honesty was false or misleading, in violation of the general prohibition found in § 1692e . . . By calling into question a debtor's honesty and good intentions simply because a check was dishonored, a

14

collection letter may be making a statement that is false or misleading to the unsophisticated consumer. Therefore, Ms. McMillan has stated a § 1692e claim sufficient to survive a Rule 12(b)(6) motion.

*McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 760-62 (7th Cir. 2006) (emphasis added).

The same is true for § 1692f:

Section 1692f, like § 1692e, states a general prohibition on using "unfair or unconscionable means to collect or attempt to collect any debt." The provision then lists eight specific violations "without limiting the general application" of the statute. CPI submits that its conduct was not "unfair or unconscionable" because it did not utilize any of the eight specifically barred practices in § 1692f, nor did it "do anything remotely similar to any of these practices." However, as the statute states explicitly, the listing of eight specific violations was not intended to limit the applicability of the general prohibition of "unfair or unconscionable" behavior.

*Id.* at 763-64.

Thus, Defendant is simply incorrect that claims cannot be brought under §§ 1692e and 1692f. Defendant's motion to dismiss should be denied.

**E.      Plaintiff Properly Asserted Claims Under 15 U.S.C. §§ 1692e(2)(A) and 1692e(10), and the Contested Language is Material.**

Client Services also alleges that Plaintiff failed to allege any facts that Defendant violated 15 U.S.C. §§ 1692e(2)(a) and 1692e(10). Def. Br. at 11.  § 1692e(2)(a) prohibits "the false representation of--the character, amount, or legal status of any debt" and § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff's claim is that the unsophisticated consumer would not know whether interest and fees were being added to the payment option amounts. Compl. ¶ 22.These facts were clearly alleged in the Complaint:

22.      The unsophisticated consumer could not determine from Exhibit A, if the settlement offer is for an amount set as of the date of

15

> Exhibit A, or a increasing amount over the course of the 3, 6, or 12 month payment schedule.
>
> 23. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.
>
> 24. The unsophisticated consumer could send checks equally breaking up the balance listed on Exhibit A into 3, 6, or 12 portions and would not know whether he had sent enough money to actually settle the account, due to the possibility that Client Services, on a whim, added interest or other charges to the settlement amount.

Compl. ¶¶ 22, 23, 24.

Consequently, the unsophisticated consumer would not be able to calculate the correct amount of each payment in order to resolve the debt. These facts are clearly alleged above. Inviting the unsophisticated consumer to pay on a payment plan that, in reality, does not resolve the debt misrepresents the character and legal status of the debt. The unsophisticated consumer may blindly assume that breaking the balance up into equal payments will, in fact, resolve the debt but, in truth, may not resolve the debt. This is a misrepresentation of the legal status of the debt and deceptive. The letter is confusing as a matter of law.

Further, this is consistent with controlling Seventh Circuit precedent. That false, misleading or confusing statements violate the FDCPA as a matter of law has been the Seventh Circuit's consistent position for decades. *See Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (collection letter stated the balance due, but proceeded to imply that the balance due was incorrect). Similarly, the courts in this district have also uniformly held that debt collectors who are not licensed as debt collectors in Wisconsin, but include language that they are licensed, also

16

violate the FDCPA. *Seeger v. Aid Assocs.*, 2007 U.S. Dist. LEXIS 22824 at *13 (E.D. Wis. Mar. 29, 2007) (misrepresentation of licensing "is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA."); *see also Radaj v. ARS Nat. Services, Inc.*, No. 05 C 773, 2006 U.S. Dist. LEXIS 68883 at *10; 2006 WL 2620394 at *3 (E.D. Wis. Sep. 12, 2006); *Seeger*, 2007 U.S. Dist. LEXIS 22824 at *13; *Czerwinski v. Risk Mgmt. Alternatives Int'l Corp. Can.*, No. 05-cv-945-LA, 2006 U.S. Dist. LEXIS 19113 at *3-4, 2006 WL 897768 (E.D. Wis. Apr. 4, 2006). In *Seeger*, the court granted Plaintiff summary judgment with no need for extrinsic evidence.

Furthermore, a debt collector's statement need not even be actually false to violate the FDCPA. *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1258 (7th Cir. 1994) (Easterbrook, J. *concurring*) ("Although the words of defendants' letter are true, the statute recognizes that literal truth may convey a misleading impression"). The statement need only be confusing to the hypothetical unsophisticated consumer, who is "considered 'uninformed, naive, or trusting,'" but "is nonetheless deemed to possess 'rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005).

In general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt collector's rights or intentions, are all material. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). Plaintiff properly alleged violations of §§ 1692e(2)(a) and 1692e(10) in his Complaint, and the violations are material. Defendant's motion to dismiss should be denied.

17

### III.    PLAINTIFF HAS ALLEGED CONCRETE HARM AND ESTABLISHED STANDING.

Defendant cites to a 1959 case, *North Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co.*, 263 F.3d 543, 545 (7th Cir. 1959), for the idea that Plaintiff's injury and damages claim is speculative: "he cannot claim any actual damage or injury based upon a set of circumstances that never happened. Instead, Plaintiff's Complaint merely supposes that additional fees might be added in were a consumer to elect to make payments under the offered payment plan. Such an assertion is not sufficient to state a claim." Def. Br. at 10. Defendant's injury and damages argument and citing reference are obviously completely outdated. This Court is still bound by the body of Seventh Circuit decisions holding that a violation entitles a consumer to statutory damages, even if he or she never read the letter containing the violation. *Bartlett*, 128 F.3d at 499; *Keele v. Wexler,* 149 F.3d 589, 593 (7th Cir. 1998) (receiving letters containing debt collector's illegal demand for $12.50 collection fee was enough to establish Article III standing). *Avila, Bartlett* and their progeny are still good law.

Defendant's current argument, of course, is based on the recent Supreme Court decision, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  Many Defendants argue that, post-*Spokeo*, plaintiffs will no longer be able to establish concrete injury under the FDCPA, but courts have consistently rejected those arguments. These Defendants ignore is the fact that the FDCPA creates substantive rights for consumers, violations cause injury to consumers, and such injuries are concrete and particularized, not "some fantastic conjecture about some future event, which never actually happened, might confuse a typical, unsophisticated consumer," as Defendant claims. Def. Br. at 10.

18

Under Article III, constitutional standing requires a plaintiff to show that: (1) he or she suffered an injury-in-fact, that is "concrete and particularized" and "actual or imminent," and not merely "conjectural or hypothetical;" (2) the defendant's complained of conduct caused that injury; and (3) it is likely, "as opposed to merely speculative," that a favorable decision by the court will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden of establishing constitutional standing. *Id.* The Supreme Court recently explained that "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc*, 136 S. Ct. at 1548 (internal quotations omitted). The injury-in-fact must also be "concrete," which means "real" and "not abstract." *Id.* at 1556. However, "concrete" is not necessarily synonymous with "tangible." *Id.* "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* at 1555. However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Thus, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Thus, to have standing to pursue her FDCPA claim, Plaintiff must allege that Defendant violated her "legally protected interest." *Lujan*, 504 U.S. at 560. Congress established the FDCPA to protect consumers from illegal collection activity. "When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit." *Id*. For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an

award of statutory damages for violations. 15 U.S.C. § 1692k(a). Here, the alleged violation involves form collection letters sent by Client Services to the Plaintiff and other class members, which Plaintiff argues violates the FDCPA. It is a clear invasion of a legally protected interest - protection from abusive and misleading collection activities - an interest which Congress explicitly protected under the FDCPA and is at issue here.

*Spokeo* is also easily distinguishable here because it did not specifically address the FDCPA at all. In *Spokeo*, the plaintiff alleged a violation of the Fair Credit Reporting Act ("FCRA"). 136 S. Ct. at 1544. The Supreme Court vacated and remanded the Ninth Circuit's decision, directing the Ninth Circuit to further analyze Article III's injury-in-fact requirement and whether the plaintiff's injury satisfied the *concrete* requirement under it. 136 S. Ct. at 1550. The Supreme Court noted that the Ninth Circuit's analysis reached only whether the plaintiff's injury was particularized, not whether the injury was concrete. *Spokeo*, 136 S. Ct. at 1550.Thus, the Supreme Court made clear that a plaintiff's allegation that his individual statutory rights have been violated is, in fact, particularized. Plaintiff alleged that his individual statutory rights were violated in the complaint and provided, as an exhibit to the complaint, a debt collection letter from Defendant, addressed to and mailed to Plaintiff, that contained alleged violations of the FDCPA.

*Spokeo* also stated that a "risk of real harm" can satisfy the concreteness requirement. 136 S. Ct. at 1549. Here, the plaintiff has alleged a sufficiently concrete injury to both Plaintiff and the Class in that the letter sent to Plaintiff and the Class was misleading to the unsophisticated consumer. The concrete injury is the misleading nature of the letter, and in that there is a risk of harm to the Plaintiff and class members who may make the 3, 6 or 12 payments to Client

20

Services but still owe money on the debt, unbeknownst to them. Defendant even admitted in its brief that the letter does not clarify whether the payment plan "resolves" the debt. Def. Br. at 9. The unsophisticated consumer has no way of knowing, from the letter, what making the 3, 6 or 12 payments will mean in terms of settlement of a legal obligation. Defendant's argument that "Plaintiff's Complaint merely supposes that additional fees might be added in were a consumer to elect to make payments under the offered payment plan" is a complete misunderstanding of Plaintiff's claim. Plaintiff's claim is that the unsophisticated consumer would not know whether interest and fees were being added to the payment amounts. There is no supposition that, in fact, they were or would be. Rather, the unsophisticated consumer would not be able to determine that fact and, consequently, would not be able to calculate the correct amount of each payment to resolve the debt. Such confusion is not speculative. Even an FDCPA attorney cannot determine, from <u>Exhibit A</u>, what payment amounts would actually resolve the debt. The letter is confusing as a matter of law.

Courts inside and outside the Seventh Circuit reject *Spokeo*-type challenges to FDCPA letter cases. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *Lane v. Bayview Loan Servicing, LLC*, 15-cv-10446, 2016 U.S. Dist. LEXIS 89258 * (N.D. Ill. July 11, 2016). In *Quinn*, for example, the plaintiffs alleged that the debt collector left at the plaintiffs' home, "door hangers" containing misleading information and lacking the required notice pursuant to 15 U.S.C. § 1692e(11).[1]

---

[1] "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the

21

*Quinn*, 2016 U.S. Dist. LEXIS 107299 at *2-3. The court agreed with recent, post-*Spokeo* decisions, including the Eleventh Circuit's unpublished holding in *Church*, that the FDCPA creates substantive rights and a letter violation is a concrete and particularized injury. *Id.* at *11-13; *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) (declining to stay proceedings in FDCPA case pending Supreme Court's decision in *Spokeo* because "Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute") (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).

Further, the FDCPA creates a substantive right not to receive debt collection letters containing false, misleading or confusing information, makes debt collectors strictly liable for violations, and provides a mandatory award of statutory damages and reasonable attorney's fees and costs to a prevailing plaintiff. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997) ("a single violation of the FDCPA is sufficient to entitle plaintiff to an award of statutory damages"); *Zagorski v. Midwest Billing Servs.*, 128 F.3d 1164, 1166 (7th Cir. 1997) ("the award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory."). Thus, once such a letter is received, the consumer has suffered a concrete injury. Applying these principles, Plaintiff has alleged a concrete injury that is sufficient to establish standing. He and the class have a substantive right to receive debt collection letters free of false and misleading statements, which Client Services violated by sending its form letter to Plaintiff and the Class. Therefore, Defendant violated interests that are protected by the FDCPA, and Plaintiff has standing. Accordingly, this Court should deny Defendant's motion to dismiss.

failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action."

22

**IV.    ALTERNATIVELY, PLAINTIFF IS ENTITLED TO PRESENT EXTRINSIC EVIDENCE THAT THE LANGUAGE IN CLIENT SERVICES'S LETTER IS MATERIALLY FALSE AND CONFUSING AND/OR MISLEADING TO THE UNSOPHISTICATED CONSUMER.**

As discussed above, Plaintiff's claim that Client Services' it is unclear if the "Balance Due" listed on Exhibit A is the number that will be broken into "3 monthly payments, 6 monthly payments, or 12 monthly payments" to resolve the account, or whether the balance will change over the course of 3, 6, or 12 months due to the accrual of interest and late fees, consequently making the payments increase over the course of time. The unsophisticated consumer has no way of determining what the payments should be in order to definitively resolve the debt.  If this Court does not agree that the letter is facially confusing as a matter of law, Plaintiff alternatively has the right to present extrinsic evidence to prove the letter is confusing to the unsophisticated consumer. The details are factual matters to be determined in discovery.

On a motion to dismiss, the Court accepts Plaintiff's facts as true, and all reasonable inferences must be drawn in Plaintiff's favor. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). The Seventh Circuit treats claims that a debt collection letter is false, confusing or misleading as a question of fact, and encourages plaintiffs to submit a consumer survey or other extrinsic evidence to support their claims. *Evory*, 505 F.3d at 776; *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 628 (7th Cir. 2009) (extrinsic evidence in forms other than a survey is permissible). Whether a debt collection letter is materially false, misleading or confusing to the hypothetical "unsophisticated consumer" can only be dismissed at the pleading stage under extreme circumstances. *Evory*, 505 F.3d at 776; *see also McMillan*, 455 F.3d at 759 ("We have cautioned that a district court must tread carefully before holding that a letter is not

23

confusing as a matter of law when ruling on a Rule 12(b)(6) motion because district judges are not good proxies for the unsophisticated consumer whose interest the statute protects.").

Generally, all a plaintiff must do to survive a motion to dismiss a complaint alleging an FDCPA violation is to allege that the debt collector's letter is confusing and plead enough factual matters to show that it is plausible that the plaintiff may be entitled to relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. 662, 678 (2009); *Brooks*, 578 F.3d at 580-81; *Walker*, 200 F.3d at 501 ("How a particular notice affects its audience is a question of fact, which may be explored by testimony and devices such as consumer surveys."); *Johnson*, 169 F.3d at 1059 ("A contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6)."); *see also Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326-27 (7th Cir. 2000); *Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998).

Plaintiff can submit extrinsic evidence that the unsophisticated consumer would interpret the disputed language in Client Services' letter after the discovery process. The standard for finding that a debt collection letter complies with the FDCPA as a matter of law at the pleading stage is an extremely heavy burden for a defendant to meet. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006). Only when it is absolutely obvious that language complies with the statute, can a confusion claim be dismissed at the pleading stage. *Evory*, 505 F.3d at 776-777. Client Services cannot meet that burden.

Client Services' tactic is about luring the consumer into a payment plan that does not actually resolve the debt and allows the creditor or a third party debt collector to continue collecting interest and fees on a debt that unsophisticated consumers believed they resolved. It is an attempt to receive payment from a debtor, perhaps at the expense of payment to another debt

24

collector that is not using such deceptive tactics. Prevention of unscrupulous debt collection practices such as this one is part of the very purpose of the FDCPA. 15 U.S.C. § 1692(e) (it is part of the purpose of the FDCPA "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged"). As in *Evory*, Plaintiff is entitled to present extrinsic evidence of how the unsophisticated consumer would react to Client Services' inherently deceptive language. *Evory*, 505 F.3d at 775-76.

In its brief, Client Services merely states its interpretation of the facts in conclusory fashion. Defendant is not entitled to its view of the facts and the inferences drawn from the pleadings on a motion to dismiss. *Lake*, 585 F.3d at 1060. It would be procedurally improper for the Court to rely upon Client Services' statement of how the unsophisticated consumer would react to the language in the letter. Plaintiff has not had the opportunity to conduct discovery. Plaintiff will address this question of fact during discovery through extrinsic evidence. In contrast, summary judgment is the "put up or shut up" moment in litigation. *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). On summary judgment, a party is required to present evidence on which a reasonable jury could rely tending to prove their claim. *Id.*

Thus, if this Court does not agree that the letter is confusing as matter of law, Plaintiff alternatively is entitled to present extrinsic evidence to prove that the letter is confusing to the unsophisticated consumer.

25

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,

Dated:  March 17, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
    John D. Blythin (SBN 1046105)
    3620 East Layton Avenue
    Cudahy, WI 53110
    (414) 482-8000; (414) 482-8001 (fax)
    jblythin@ademilaw.com

    ***Counsel for Plaintiff and the Proposed Class***